MERCHANTS' SECURITIES CORPORATION, RESPONDENT,
v. SAM SNYDER, APPELLANT.

Argued October 17, 1929—Decided February 3, 1930.

For the respondent, *Green & Green.*

For the appellant, *Herman B. J. Weckstein.*

PER CURIAM.

This is an appeal by the defendant, Sam Snyder, from a judgment for $1,468.26 and costs against him and in favor of the plaintiff, Merchants' Securities Corporation, entered in the New Jersey Supreme Court on a verdict directed by the trial judge at the Essex Circuit. The action was on an installment promissory note for $1,383 dated January 23d, 1928, payable to bearer, signed by defendant and delivered by him to Chandler Newark Motors, Incorporated. The note was payable in installments. On the day of its date it was sold by Chandler Newark Motors, Incorporated, to plaintiff for $1,200. Nothing was paid on the note and

plaintiff sued for the entire amount of principal and the accrued interest, amounting at the time of trial to $1,483.26. Judgment was allowed for that sum less an amount of $15 conceded to the defendant. The note was given in payment of an automobile which the Chandler Newark Motors, Incorporated, was contractually obligated to, but actually never did, deliver to the defendant.

Defendant argues seven points in his brief. The first and third points relate to the court's refusal to permit certain questions to be asked; but counsel failed to note exceptions to the rulings and the questions, therefore, are not before us. *Kargman* v. *Carlo*, 85 *N. J. L.* 632; *Blanchard Brothers* v. *Beveridge*, 86 *Id.* 561.

Point two is that "fraud in the inception, or proof that the title of any person who has negotiated the instrument is defective, is always admissible." Whatever may be the merit of this legal concept, counsel does not indicate, nor does the related assignment specify, the applicability thereof. Not only do we find no proof of fraud, but counsel for the defendant is himself recorded at page 47 of the printed case as saying: "There is no way of proving that the plaintiff had notice of the fraud or is a party to the fraud. I am willing to state that as an open fact * * *."

Point four is that "where there is any evidence of bad faith, or circumstances from which bad faith may be inferred, it is a question for the jury to determine if the owner is a holder in due course, free from defenses." The point is predicated upon the sixth assignment of error, which is that the trial judge directed a verdict when he should have submitted the case to the jury. But no evidence has been called to our attention—and we have found none—going to show, either directly or by legal inference, bad faith on the part of plaintiff.

Point five is that "one who purchases a note accompanied by a contract takes subject to all defenses under said contract, and is not a holder in due course." It, also, is specifically predicated upon the sixth assignment of error which, in full, reads: "Because the trial judge, upon the trial of said

cause, directed a verdict in favor of the plaintiff-respondent against the defendant-appellant over the objection of said defendant-appellant, where said trial judge should have submitted the case to the jury for its verdict." We consider that at the close of the case there was no question of fact to be submitted to the jury and that the ruling of the court in this respect was without error.

The sixth point is that "where the damages are speculative, it is a question for the jury to determine what amount, if any, the plaintiff should recover." But the damages herein were not speculative. They were a mere matter of arithmetical calculation. An allowance of $15 was conceded by the plaintiff as an allowance to the defendant for a saving in insurance disbursements. It really was an element of defense and no proof of the amount was produced. In the absence of such proof judgment could have been taken on the note without making any deduction. The concession does not operate to make the damages speculative.

The seventh point is that "where the note is fraudulent in inception, the holder in due course may only recover the cost of purchase, plus interest." The plaintiff was a holder in due course. It became the transferee and paid the amount agreed to be paid before it received notice of any infirmity in the instrument or defect in the title of the person negotiating the same. It is brought within the definition set forth in Negotiable Instruments act. *Comp. Stat.*, p. 3741, § 52. Being such, it held the instrument free from any defect of title of the prior parties and free from defenses available to prior parties among themselves and was entitled to "enforce payment of the instrument for the full amount thereof against all parties thereon." Negotiable Instruments act, *Comp. Stat.*, p. 3741, § 57. *Montgomery Garage* v. *Manufacturers Liability Insurance Co.*, 94 *N. J. L.* 152. The cases cited by defendant in support of his point were, with the exception of *Davis* v. *Clark*, 85 *Id.* 696, all decided before the passage of the Negotiable Instruments act and, so far as concerns the point under discussion, were limited in their application by reason of section 54 of the act to

instances where the holder had not, at the time of receiving notice of infirmity in the instrument or defect in the title thereof, paid the full amount agreed to be paid therefor, in which event he is deemed a holder in due course only to the extent of the amount theretofore paid by him. Davis *v.* Clark is not pertinent. The plaintiff therein was the holder of the note who, although in the trial court he recovered only the amount actually paid by him for the assignment thereof, nevertheless stood content with his judgment and successfully resisted on appeal the effort of the defendant, on other grounds, for reversal.

The judgment below will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, KALISCH, BLACK, CAMPBELL, LLOYD, CASE, BODINE, VAN BUSKIRK, MCGLENNON, KAYS, HETFIELD, DEAR, JJ. 15.

*For reversal*—None.